RUSSELL S. HUMPHREY, SBN 208744
343 E. Main Street, Suite 714
Stockton, Ca. 95202
Telephone: (209) 625-8976
Facsimile:  (209) 625-8673
Email: rshumphreylaw@yahoo.com

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>DENNIS MORITA,<br><br>DEFENDANT. | Case No. 2:19-cr-053-WBS<br><br>**DEFENDANT'S SUPPLEMENTAL MOTION TO WITHDRAW PLEA (FRCRP RULE 11(d)(2)(B))** |

### I.   Introduction/Summary

This pleading is Defendant Dennis Morita's ("Defendant") Supplemental Motion to Withdraw his Plea pursuant to FRCR 11(d)(2)(B).  A hearing was held on September 25, 2023 wherein Defendant's motion was argued.  (Dkt. 52).  The court allowed supplemental briefing and further argument with a hearing date of December 18, 2023.

## II.  Law

In this case the primary issue is whether Defendant can show a 'fair and just reason' for the request to withdrawal.[1]

At Motion Hearing on September 25, 2023, (Dkt. 52) the court referred to the case of <u>United States v. Littlejohn</u>, 224 F.3d 960 (9th Cir. 2000) as instructive for the purposes of this motion.  In particular, the court referenced the distinction between 'direct and collateral consequences'.  (Id.; See; <u>Littlejohn</u>).

### III. Supplemental Argument

**(a)  Defendant's declaration he was not fully advised of the consequences of his plea**

**(i)  Defendant *may* keep his Enrolled Agent license even if he has a felony conviction**

The government is correct that whether or not Defendant may keep his Enrolled Agent ("EA") license is within the discretion of the Interna Revenue Service ("IRS").  If Defendant were convicted of a felony, it would NOT automatically disqualify him from keeping his EA license.  In theory, Defendant could keep his EA license even with a conviction for two felonies, both of which are likely crimes of moral turpitude.

This fact suggests Defendant's licensure issue falls within the "collateral consequences" discussed in <u>Littlejohn</u>.  If these felony convictions do not automatically disqualify Defendant from keeping his EA license, then it could be argued, as the government has, that the consequences are indeed collateral.   It should be noted the defense concedes Defendant's ability to keep his EA

license is fully within the discretion of the IRS.  Yet, even if Defendant's licensure issue is a "collateral consequence", Defendant may still be entitled to relief.

Since <u>Littlejohn</u> does not explicitly foreclose an advisement of both "direct and/or collateral consequences" then the content of the plea colloquy pursuant to Rule 11 is within the court's discretion.  The court may or may not advise a defendant about "collateral consequences". Accordingly, the paramount question in this case is thus: "Would the court have advised Defendant that Defendant would likely not be able to keep his EA license, if the court knew of such a fact?"[2]

It is clear the government knew this fact as Defendant's license status was part of the government's factual basis for the plea.  (Defendant's Plea Transcript, April 22, 2019, pg. 16, ln. 11).

### (ii) The consequences of the plea are direct

In <u>Littlejohn</u> the court discussed two similar laws and distinguished those laws according to the "direct and collateral consequences" of those particular laws.[3] The court did not, however, weigh the relative consequence to the particular defendant.  In other words, the court in <u>Littlejohn</u> did not weigh, subjectively, the relative impact of the plea to the particular defendant.

---

[1] It does not appear there is a definite, explicit definition of 'fair and just' in the Rule 11 context.  The law suggests, but does not explicitly state, that the 'fair and just' analysis entails a case-by-case analysis by the court.  What would constitute 'fair and just' appears to be at the discretion of the court.

[2] Defendant concedes it in patently unreasonable for any court to advise every single defendant of every single consequence, both foreseeable and unforeseeable, in every single case.  It is clear the law does not provide as such. However, there may be times when consequences beyond Rule 11 may be disclosed to a defendant.  For example, a court may advise an attorney or judge of licensure consequences of a felony plea, even though said consequences may or may not be direct.

[3] The facts of this case raises an interesting legal issue.  It is true that Defendant's ability to keep his EA license is within the discretion of the IRS and it would appear that such a fact would suggest it was a "collateral consequence" of the plea. However, the court in <u>Littlejohn</u> did not engage in the "direct versus collateral consequences" impact on the particular defendant.  Defendant argues that in this case there could not be a more direct consequences of his plea than his inability to continue in his profession.  In no way would Defendant categorize his inability to work as 'collateral'.

The <u>Littlejohn</u> decision distinguished the objective legal difference between two similar laws. It was left unclear whether a court should weight the relative subjective consequence of any particular advisement.  The consequences to Defendant in this case could not be more direct as it will likely preclude him from engaging in the only employment he has known for fifty (50) years. There are many theoretical advisements that do not have the same impact as the Defendant's loss of his only livelihood that are regularly given.[4]

**(b) Defendant's declaration of innocence**

 Defendant wrote to the court: "I did not intentionally attempt to defraud anyone out of money.  I honestly believed that the loans to Paul Gross were safe and secure."  (Dkt. 33; PSR for Defendant, 6/30/22, pg. 16).

Defendant will not repeat what was argued in his initial motion.  However, it should be noted that at the last hearing on the motion (Dkt. 52), the government indicated it did not seek any charges against the co-conspirator based on 'insufficient evidence'.

In this case, the entire investigation and initial prosecution was against the co-conspirator Paul Gross.  Defendant was a tangential participant.  Mr. Gross was enriched by millions of dollars while Defendant profited by a mere $60,000.00.   It seems unfair that Mr. Gross would escape any liability while, at the same time, Defendant must shoulder two felonies.

Indeed, the government's positions begs the question of whether the government could prove the elements of count 1 for a finding of guilt against Defendant if it has a good faith belief there is insufficient evidence against the co-conspirator.  For example, under the plea agreement, Defendant contributed to a conspiracy to commit mail fraud while sharing the intention to defraud of the co-

---

[4] I believe the court shared an anecdote at the last hearing wherein it stated there is an additional advisement (food stamps) during the plea colloquy, even though said advisement may not have any real world, or subjective, meaning to a

conspirator, Mr. Gross.  If there was not, in fact, sufficient evidence to prosecute Mr. Gross, the co-conspirator, of any crime, then the issue of whether Defendant could be charged and convicted of the conspiracy must be resolved.

In this case, it appears there was not a conspiracy between two or more people to commit mail fraud.

## IV. Conclusion

Based on the foregoing, Defendant respectfully requests the court grant his motion to withdraw his prior guilty plea.

Date:   November 27, 2023.

/s/  *Russell S. Humphrey*

_____

RUSSELL S. HUMPHREY, Attorney for Defendant

particular defendant.

Defendant's Rule 11 Motion
U.S. v. Morita, 2:19-cr-53-WBS